# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

UNITED STATES OF AMERICA,

           Plaintiff,  :  Case No. 2:20-cr-110
                              Civil Case No. 2:23-cv-01586

                              Chief District Judge Sarah D. Morrison
  -  vs  -                 Magistrate Judge Michael R. Merz

CARL LAMONT GORDON, JR.,

           Defendant.  :

## REPORT AND RECOMMENDATIONS

This is a case under 28 U.S.C. § 2255 in which Defendant seeks to have his conviction for drug-trafficking and firearm offenses vacated on grounds he received ineffective assistance of trial counsel (Motion to Vacate, ECF No. 50).  The matter came on for evidentiary hearing on August 27, 2025 (Minute Entry for 8/27/2025).  Defendant consented to appear remotely and the hearing was thus held in open court in the video conference room attached to The Historic Courtroom at 120 West Third Street, Dayton, Ohio 45402.  Present were Defendant (remotely), Dennis Belli (Defendant's attorney), Assistant United States Attorneys Elizabeth Geraghty and Brian Martinez, and members of Defendant's family (Transcript, ECF No. 101).  The proceedings have been transcribed (*Id.*) and the parties have filed post-hearing briefs (ECF Nos. 94, 95, 100), rendering the Motion to Vacate ripe for decision.

1

District Judge (now Chief Judge) Morrison referred the Motion to Vacate to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72(b), and Amended General Order 22-05, requiring the undersigned to prepare a report and recommended decision on all matters deemed dispositive by statute or precedent (ECF No. 62). As a post-judgment matter, the Motion to Vacate requires a recommendation.

**Litigation History**

Defendant was indicted July 14, 2020, and charged with possession of a firearm by a convicted felon (Indictment, ECF No. 1, Counts One, Two, and Four, specifying four qualifying prior convictions) and possession with intent to distribute twenty-eight grams or more of crack cocaine (Count Three). Defendant then had a pending case in Athens County which delayed his arraignment (ECF No. 6). Prior to the arraignment, Attorney Sanuel Shamansky entered his appearance as Defendant's counsel on September 25, 2020 (ECF No. 8). Shamansky filed no pretrial motions, but quickly negotiated a Plea Agreement which was filed December 14, 2020, and in which Defendant agreed to plead guilty to Counts 1, 3, and 4 (ECF No. 14, PageID 29). The agreement acknowledged a possible penalty of five to sixty years (PageID 30). *Inter alia,* the parties agreed "the Defendant committed the offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." *Id.* at PageID 31. On December 28, 2020, Judge Morrison conducted the required plea colloquy under Fed. R. Crim. P. 11 and accepted Gordon's guilty plea (Minutes, ECF No. 16).

For reasons not reflected in the relevant Entry, sentencing was re-set from May until August, 2021 (ECF No. 31) and then again for October (ECF No. 34). On October 29, 2021,

eleven months after his guilty plea was accepted, Defendant was sentenced to the 144 month sentence he is now serving and from which he seeks relief (ECF Nos. 36, 37). Continuing to represent Gordon, Attorney Shamansky filed a Notice of Appeal (ECF No. 40).  New counsel was appointed for appeal and then the appeal was voluntarily dismissed (ECF No. 49)[1]. The reasons for voluntary dismissal have not been disclosed, but the Plea Agreement contains the following Waiver of Appeal:

> **Waiver of Appeal:**  In exchange for the concessions made by the USAO in this plea agreement, the Defendant waives the right to appeal the conviction and sentence imposed, except if the sentence imposed exceeds the statutory maximum.  Defendant also waives the right to attack his sentence collaterally such as by way of a motion brought under 28 U.S.C. § 2255 and 18 U.S.C. § 3582. **However, this waiver shall not be construed to bar a claim by the defendant of ineffective assistance of counsel or prosecutorial misconduct.**

(ECF No. 14, PageID 33, emphasis added)[2].

---

[1] Prior to the dismissal, Attorney Shamansky had ordered the sentencing hearing transcribed and it was (ECF Nos 41, 42).

[2] The bold-faced language (the "Holder Exception") was imposed on United States Attorneys by Attorney General Eric Holder (2009-2015) and the limitations has not been removed despite the radical changes in administration of the Justice Department since Mr. Holder's tenure.  In the experience of the undersigned, the Holder Exception makes the Waiver of Appeal ineffective in the face of creative pleading.  In the instant case without the Holder Exception, Defendant could have pleaded that Judge Morrison committed reversible error when she used the career offender Guideline calculation.  That pleading is barred by the Holder Exception, but the bar is easily evaded by pleading Gordon received ineffective assistance of trial counsel when his attorney failed to raise that point.  The Holder Exception dramatically reduces the value of the appeal waiver in promoting finality and reducing the workload of Assistant United States Attorneys and the courts.

**Positions of the Parties**

**The Motion to Vacate**

28 U.S.C. § 2255(g) sets a one-year limitation on motions to vacate. The instant Motion was filed by retained counsel Dennis Belli May 10, 2023, about one week before the statute expired. In it Gordon pleads three claims of ineffective assistance of trial counsel:

> **Ground One:** Failure to object to Gordon's classification as a career offender under the Sentencing Guidelines.
>
> **Ground Two:** Failure to request a reduction of Gordon's career offense base level for acceptance of responsibility and a government-requested downward departure.
>
> **Ground Three:** Failure to request an order that Gordon's federal sentence be served concurrently with his state sentence.

(Motion to Vacate, ECF No. 50, PageID 330-33.)

**Government's Answer**

In answering the Motion to Vacate, the United States raised no affirmative defenses. As to Ground One, it noted that the parties had stipulated in the Plea Agreement that Gordon had two prior felony convictions for controlled substance offenses and even without the stipulation, Gordon had been bound over as an adult and convicted of marijuana trafficking even though he was only seventeen at the time (ECF No. 58, PageID 412).

As to Ground Two, the United States asserts that, regardless of whether Attorney Shamansky asked for them, Gordon received the two Guidelines range reductions referenced in Ground Two (*Id.* at PageID 413).

As to the failure to request an order for concurrent service of sentences, the United States notes that no sentence had yet been imposed in the Athens County case. It posits that Attorney Shamansky therefore strategically concentrated on obtaining as low a sentence as possible in this

case. Because the parties agreed to "carve out" the Athens County facts from relevant conduct, the Government posits the Court would have been unlikely to run the sentences concurrently. *Id.* at PageID 414.

Finally, the United States notes that in both the Plea Agreement and at the plea colloquy, Gordon stated he was completely satisfied with Attorney Shamansky's representation. *Id.* at PageID 414.

**Gordon's Reply**

In his Reply Gordon notes the absence of an anticipated affidavit from Attorney Shamansky to obtain which the United States had sought extensions of time and notes approval of ineffective assistance of trial counsel claims in the Department of Justice Manual, responding to the Government's claim that it is merely another way of attacking the sentence. It also rebuts the assertion that Gordon's marijuana trafficking conviction is properly counted as justifying a career offender designation.

**Subsequent History**

To resolve whether an evidentiary hearing was needed, the Court ordered the deposition of Attorney Shamansky (ECF No. 71). After the deposition was taken and transcribed (ECF No. 73), the Court ordered that it would consider his deposition testimony without his needing to appear personally. Questions of the possible testimony of other witnesses were resolved and the evidentiary hearing was held August 27, 2025, with the appearances noted above.

**Attorney Shamansky's Testimony**

Attorney Sam Shamansky began representing Gordon in the Athens County case in April 2020, and in this case in September of that year (Transcript, ECF No. 73). From the beginning Gordon did not intend to go to trial in this case. Attorney Shamansky began dealing with Assistant United States Attorney Elizabeth Geraghty shortly after this case was filed. He identified the Plea Agreement and accepted that there was a conflict between a base offense level of 34 (based on two prior drug offenses) and a base offense level of 28 based on the drug quantity involved in this case. He could not remember whether he had ever discussed with Gordon the consequence of stipulating to the career offender classification, but agreed that it should have been done.

Having identified the final Presentence Report, Attorney Shamansky agreed the probation officer relied on the trafficking marijuana conviction as a second drug offense. *Id.* at PageID 522. He agreed Gordon's sentence for the trafficking conviction was community control, not incarceration. *Id.* at PageID 526-27. He agreed there was "a discrepancy between paragraphs 34 and 50 versus paragraph 63" in the Presentence Report, but did not make an objection based on that discrepancy. *Id.* at PageID 529. In his opinion, that should have been done because

> You know, we strive to always uncover every single issue that's helpful to a client. I'm responsible for the objection letter that goes to the client, and I'm responsible for the work that my colleagues do. I live by it and I die by it. And in this case, based on the work you've uncovered, I think this would have been a viable issue to raise. I mean, you know, some issues are Hail Marys[3] and are ridiculous, and you know, as an appellate lawyer and as an experienced criminal practitioner, just as everybody in this room knows, raising those issues hurts a client. But if it's a viable issue,

---

[3] The "Hail Mary" is a short prayer very common in Roman Catholic piety prior to the 1960's. In Catholic football, however, it is a forward pass so unlikely to be caught that its success would be considered a miracle. It is the latter usage which has passed into common parlance.

6

> even if it's nor the greatest issue in rhe [sic] world, it should be raised. . .
>
> This is a significant issue, No. 1. No. 2, I believe, looking back on the work that you've [Attorney Belli] uncovered and that we didn't uncover, it should have been raised. There's no playing around with that, I don't think.

*Id.* at PageID 529-30.

Attorney Shamansky reached an agreement with the Athens County prosecutor that the state sentence should be served concurrently with the federal sentence and the Common Pleas judge entered an order to that effect. *Id.* at PageID 539.

On cross-examination by Ms. Geraghty, Mr. Shamansky admitted that Gordon's community control sentence for the trafficking conviction was to be served after his incarceration. *Id.* at PageID 546.  He expressed his opinion that the Sentencing Guidelines were very unfair and said he would not argue against his client and would "rather have a sword stuck up my backside than do that." *Id.* at PageID 551.  He had not done any independent analysis of Gordon's claims in this case "because independent analysis would mean that I'd be trying to cover my rear end. I'm not trying to cover my rear end. I want what's best for the client." *Id.* He agreed that he had missed the 17-month issue that Mr. Belli had raised on Gordon's behalf. *Id.* at PageID 553.  Whether it affected the sentence he thought was for Judge Morrison to decide.  *Id.*


**Defendant's Testimony**

Attorney Belli took Gordon through his criminal history as it related to the trafficking in marijuana charge and confirmed he had never served a committed sentence on that charge. (Transcript, ECF No. 101, PageID 765).

7

He had been arrested on new charges out of Athens County, but was released on bond and the case was dormant until he was arrested on the federal charges in this case in January, 2020. *Id.* at PageID 769. He discharged his original attorney and retained Attorney Shamansky. *Id.* at PageID 771. He claims he told Attorney Shamansky at the outset that he wanted to make sure any prison time was concurrent. *Id.* at PageID 774. Gordon testified he never signed the Plea Agreement[4] and never discussed it with Shamansky before the plea colloquy. *Id.* at PageID 784. He claims that when he received the presentence report, he immediately reached out to Mr. Shamansky to discuss the supposed committed sentence from Fairfield County. *Id.* at PageID 790. Attorney Shamansky said he would look into it. *Id.* at PageID 793. During the sentencing hearing, there was no discussion of concurrent sentences. *Id.* at PageID 799.

When it came time to be sentenced in Athens County, the plea agreement provided for a sentence concurrent with the federal sentence. *Id.* at PageID 801. However when Gordon was transferred to federal custody at the end of his state sentence in December, 2023, he was not given any credit against his federal sentence for the time in state prison. *Id.* at PageID 809.

## Analysis

The governing standard for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

---

[4] He later admitted that he authorized Attorney Shamansky to sign it on his behalf.

8

> showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

To prevail on an ineffective-assistance-of-counsel claim, a movant must establish that (1) counsel's performance was deficient and (2) the deficiency resulted in prejudice, meaning that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Shimel v. Warren*, 838 F.3d 685, 696 (6th Cir. 2016).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

9

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. *Id*., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter*, 562 U.S. 86, 111-112 (2011).


**Ground One:  Failure to object to Gordon's classification as a career offender under the Sentencing Guidelines.**

In the usual case of a claim of ineffective assistance of trial counsel, an attorney accused of malpractice will defend his conduct or counsel defending the conviction will construct a plausible way in which the accused conduct can be construed to have been strategic behavior.  In this case Attorney Shamansky has fallen on his sword and admitted deficient performance in

10

failing to prevent Gordon from being classified as a career offender. That is to say, he admitted the correctness of Gordon's testimony that he had not been incarcerated on the marijuana trafficking conviction he incurred at age seventeen so that that conviction, albeit it was in adult court, should not have counted toward classifying Gordon as a career offender. This satisfied the deficient performance prong of *Strickland*.

Whether Gordon was prejudiced by Shamansky's error is a separate question. Judge Morrsion accepted Gordon's classification as a career offender and began her sentencing analysis from that point. However, she departed downward from the calculated career offender Guideline range and actually imposed a sentence 118 months below the bottom of that range. Despite missing the career offender miscalculation, Attorney Shamansky argued vigorously for a below-range sentence, dumping large amounts of vitriol on the Sentencing Guidelines regime and what he viewed as its unfairness to his client in this case.

The United States argues that the below-Guidelines sentence was so favorable to Gordon that there is no reasonable probability he was prejudiced by Attorney Shamansky's deficient performance. On the other hand, neither party has offered any evidence which supports or rebuts an inference either way. For example, we are not told how Judge Morrison usually reacts to corrections in Sentencing Guideline corrections.

In the absence of any such evidence, the undersigned declines to speculate on whether it is "reasonably probable" that Judge Morrison would have imposed a lower sentence. The Judge herself can evaluate whether Attorney Shamansky's deficient performance had an impact on the ultimate sentence. If it did, she has authority to vacate the sentence and re-sentence Gordon.

**Ground Two: Failure to Request a Downward Departure in the Guideline Range for Gordon's Acceptance of Responsibility and Recognition of the Government's Request for a Downward Departure.**

In his Second Ground for Relief, Gordon claims he received ineffective assistance of trial counsel when Attorney Shamansky failed to request a downward departure in the Guideline Range based on his acceptance of responsibility for his criminal conduct and recognition of a government request for downward departure.

The Government's Answer claims the Court granted both of these departures (Answer, ECF No. 58, PageID 413). Attorney Belli elicited no testimony from either Attorney Shamansky or the Defendant on this claim. The undersigned concludes it is without merit and should be dismissed.

**Ground Three: Failure to Request Concurrent Sentences**

In his Third Ground for Relief, Gordon asserts he received ineffective assistance of trial counsel when Attorney Shamansky did not request this Court order his federal sentence and the anticipated Athens County sentence be served concurrently.

In its Answer, the Government notes that the Athens County case had not yet been resolved at the time of sentencing in this case and hypothesized that Attorney Shamansky focused on obtaining as low a federal sentence as possible (Answer, ECF No. 58, PageID 413). Also because the parties agreed to "carve out" the Athens County facts from relevant conduct in this case, the Government hypothesizes the Court would have been unlikely to impose concurrent sentence. *Id.* at PageID 414. Gordon rejects that argument because, he says, once it was decided that he would

be sentenced as a career offender, the "carve out" had no impact.  (Reply, ECF No. 59, PageID 421).

As noted, Attorney Shamansky represented Gordon in both this and the Athens County case.  The plea agreement he negotiated in the state case did provide for concurrent service of the two sentences.  However, at the expiration of the state sentence when he was returned to federal custody, Gordon learned that the federal Bureau of Prisons had given him no credit for the time spent in state custody.  Asked about this at his deposition, Attorney Shamansky suggested his plan for concurrent sentences would have work[ed] better if Gordon has been in federal custody when the state sentence was imposed (Transcript, ECF No.73, PageID 554-55).

> A. Brian, I — Mr. Martinez, I don't -- I know it was a question of timing.
>
> Q. Yeah.
>
> A. And that, I didn't control. You know, the fed case came later. I guess looking back, I was hoping that his time would — that he could get the benefit of as much concurrent time and credit as possible given the circumstances.
>
> Q. And, in fact, you pushed for that in the Athens case, didn't you?
>
> A. Yeah, of course.
>
> Q. You made it part of the plea agreement?
>
> A. Yes.
>
> Q. And the judge ultimately ruled that they would be served concurrently.
>
> A.  True.
>
> Q. Right?

13

>A. Yeah.
>
>Q. So you succeeded there.
>
>A. Well, I don't know about -- I mean, that's — again, that's -- these are terms — I don't know that it was so successful now that I'm hearing that, you know, what would have been more successful is if he had been in federal custody, I think, would be Dennis' -- Mr. Belli's position, and then Athens ran their time with the term that he was already serving in federal custody, that would have been more better.

*Id.*

Gordon's treatment by the Bureau of Prisons is consistent with the primary jurisdiction doctrine which provides that the sovereign first obtaining jurisdiction retains that jurisdiction until any sentence imposed is satisfied. See Sadowski, Interaction of Federal and State Sentences When the Federal Defendant Is Under State Primary Jurisdiction (ECF No. 94-1). Gordon was charged first in Athens County. His appearance in federal court was obtained by Writ of Habeas Corpus ad Prosequendum (ECF No. 7). He remained in federal custody until conclusion of this case and was then returned to state custody where he remained until he completed service of his state sentence.

As Gordon points out, a district court has authority to order that a federal sentence be served concurrently or consecutively to a state sentence which has not yet been imposed. *Setser v. United States*, 566 U.S. 231, 236 (2012). Thus Judge Morrison could have included a concurrent sentence specification in the judgment in this case had she decided to do so. But Attorney Shamansky did not ask nor does he suggest any strategic reason for failing to do so. Given the importance of the concurrent sentence to Mr. Gordon and its availability to Judge Morrison if she had been asked, Attorney Shamansky's failure to ask should be held to be deficient performance.

14

However, Gordon has failed to show prejudice. As the Government's Post-Hearing Brief points out, the Bureau of Prisons, recognizing her authority to impose a concurrent sentence under *Setser*, wrote to Judge Morrison asking her intention.

> Should the Court indicate the sentence is to run concurrently with the state term, the Bureau will commence the sentence in the above judgment on the date of imposition, which will result in Mr. Gordon's release from Bureau custody on or about March 28, 2030. Should the Court indicate the sentence is to run consecutively to the state term, he will continue to a current projected release date of March 17, 2034.

(Letter to Chief Judge Morrison dated May 30, 2025; attached to ECF No. 95, PageID 718-19).

Gordon objects to the Magistrate Judge's consideration of this letter on several grounds (Defendant's Post-Hearing Reply Brief, ECF No. 100, PageID 728-30). The Magistrate Judge agrees it would have been preferable for the Government to disclose the existence of the letter to the Defendant and to have included it as an exhibit at the evidentiary hearing. That said, any potential harm done can be cured during Judge Morrison's *de novo* review of this Report.

Assuming Chief Judge Morrison has received the letter (which was only filed as an attachment to the Government's Post-hearing Brief) and has responded by not indicating an intention to have the sentences served concurrently, that would eliminate any claim of prejudice on the Third Ground for Relief. If, however, she has responded that concurrent sentences were her intention, then, as conceded by Defendant, his Third Ground for Relief is moot. Government counsel should complete the record by filing any response Chief Judge Morrison has made to the Bureau of Prisons.

**Conclusion**

15

As to Ground One, the Magistrate Judge finds Defendant has shown deficient performance and defers to Chief Judge Morrison on the question of whether she would have imposed a lesser sentence if Gordon has not been classified as a career offender. Ground Two should be dismissed. Ground Three should be dismissed as moot if Chief Judge Morrison has advised the Bureau of Prisons to run Gordon's federal sentence concurrently with the Athens County sentence. If she has advised the BOP that she intended consecutive sentences, Ground Three should be dismissed for lack of proof of prejudice, the second *Strickland* prong.

December 29, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.